UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


LOUIS JAMES STRIANESE,

                    Petitioner,

vs.                                    Case No.  2:08-cv-159-FtM-36DNF

SECRETARY, DOC,

                    Respondent.

_____


**OPINION AND ORDER**

Petitioner Louis James Strianese (hereinafter "Petitioner" or "Strianese") initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254 on February 20, 2008.[1]  The Petition challenges Petitioner's March 6, 2000 conviction for lewd fondling entered in the Twentieth Judicial Circuit Court, Lee County, Florida (case number 99-CF-2055).  Petition at 1.[2]  The Petition raises the following ten grounds for relief:

_____

[1]The Petition was filed in this Court on February 25, 2008; however, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." *Alexander v. Sec'y Dep't of Corr.*, 523 F.3d 1291, 1294 n.4 (11th Cir. 2008), abrogated on other grounds, *Wall v. Kholi*, ___U.S. ___, 2011 WL 767700 *4 (March 7, 2011) .

[2]The page numbers referenced within this Order, other than to the page number referenced in the Exhibits, are to the page of the identified document as it appears on the Court's case management electronic computer filing system.  Exhibits are available in paper format only.

Ground 1: Ineffective assistance of counsel because counsel did not utilize appropriate means to submit motion for jury to view alleged crime scene;

Ground 2: Ineffective assistance of counsel because counsel did not utilize recognized predicate to impeach State's key witness' testimony with conflicting statements sworn under oath;

Ground 3: Ineffective assistance of counsel because counsel would not allow Defendant to testify on his own behalf;

Ground 4: The trial court erred in granting the State's motion *in limine* depriving Defendant of constitutionally guaranteed safeguards of due process to present facts to the jury concerning alleged victim;

Ground 5: Ineffective assistance of counsel because counsel did not move to have experts evaluate Defendant's mental health pursuant to Fla. Stat. §§ 3.210 and 3.216;

Ground 6: Ineffective assistance of counsel because counsel did not interview defense witness who came forth and had information to aid defense;

Ground 7: Ineffective assistance of counsel because counsel upon discovery of juror's misconduct did not move for mistrial;

Ground 8: Ineffective assistance of counsel because counsel did not inform the State and trial court that Defendant disputed the accuracy of his P.S.I. and score sheet;

Ground 9: Florida Sexual Predator Act, Fla. Stat. § 775.21(5), (6) and (7), is unconstitutional because it denies Defendant due process;

Ground 10: Ineffective assistance of counsel because counsel interviewed Defendant and appeared in court under the influence of alcohol.

Petition at 4-12.

After filing a Limited Response (Doc. #13) detailing Petitioner's post-conviction filings and explaining why the

Petition was timely filed, Respondent filed a Supplemental Response to the Petition to address the grounds raised for relief (Doc. #34, Response).  Respondent contends that Grounds 1, 3, 4, 6, 8, and 10 of the Petition are due to be dismissed as procedurally barred. Further, Respondent submits that Petitioner has failed to meet his burden under 28 U.S.C. § 2254(d) with respect to Grounds 2, 5, 7 and 9 of the Petition.  Respondent filed exhibits (Exhs. 1-93) in support of its Response, including the record on direct appeal (Exh. 1).  Petitioner filed a Reply to Respondent's Response (Doc. #35, Reply).  This matter is ripe for review.

## I. Procedural History

On August 19, 1999, Strianese was charged by an Information with lewd fondling of "C.A., a child under the age of 16 years, in a lewd, lascivious, or an indecent manner, by fondling said child's genitals with his hands or fingers, contrary to Florida Statute § 800.04(1)."  Exh. 1, Vol. I at 4-5.  Strianese, represented by private counsel, Richard M. Fuller, Esquire, entered a written plea of Not Guilty.  *Id*. at 2.  Prior to trial, defense counsel filed a Motion for Crime Site View by Jury.  *Id.* at 8.  The State also filed a pretrial "Motion *In Limine*" to prevent any mention of whether or not the victim, who at the time of trial was 16 years of age, had ever been "adjudicated delinquent of any offense," and, whether or not the victim "is currently or was at the time of the offense . . . serving any community sanctions ordered in the

juvenile justice system." *Id.* at 10-11.  Prior to the start of the trial on February 2, 2000, the court denied Defendant's Motion for Crime Site View by Jury, and granted the State's Motion *In Limine.* *Id.* at 18; Supp. I at 5-14 (transcript of hearing).

On February 3, 2000, the jury returned a verdict of guilty as charged.  *Id.* at 21.  On February 4, 2000, the State filed a "Motion to Declare Defendant a Sexual Predator." *Id.* at 12-13.  To support its Motion, the State additionally offered evidence that Strianese had previously been sentenced to seven years of State probation for a lewd assault.  *Id.* at 14-17.  On March 6, 2000, the court determined that Strianese met the criteria of a sexual predator under Florida law, adjudicated Strianese guilty of lewd fondling consistent with the jury verdict, and sentenced Strianese to 15 years imprisonment.  *Id.* at 22-23; 24-30 (transcript of March 6, 2000 hearing); Exh. 1, Vol. II at 31.  Strianese perfected the following filings challenging his conviction and sentence.[3]

## 1.  **Direct Appeal**

On March 17, 2000, defense counsel, Mr. Fuller, filed a Motion to Withdraw and sought appointment of the Public Defender for Petitioner on direct appeal.  *Id.* at 37.  That same day, Mr. Fuller filed a Notice of Appeal.  *Id.* at 39-40.  On March 20, 2000, the

---

[3]The Court does not address Petitioner's other collateral motions that were not properly filed or that he voluntarily dismissed in reviewing the procedural history, because they are not relevant to the claims raised in the instant Petition.

Public Defender was appointed to represent Strianese on direct appeal. *Id.* at 52. Strianese filed a direct appeal brief raising five grounds for relief. Exh. 2. The State filed a brief in response. Exh. 3. Strianese filed a reply brief. Exh. 4. On March 30, 2001, the appellate court *per curiam* affirmed Strianese's conviction and sentence in case number 2D00-967. Exh. 5; *Strianese v. State*, 785 So. 2d 460 (Fla. 2d DCA 2001).

## 2.  Rule 3.850 Motion

Strianese filed a *pro se* motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, dated September 18, 2001, raising the following grounds for relief:

(1)  trial counsel was ineffective for giving defendant erroneous advice concerning his constitutional right to testify on his own behalf to tell the jury his version of events;

(2)  trial counsel was ineffective for failing to make the trial court aware that defendant was under a doctor's case and taking psychotropic medication at the time of his trial which hindered his decision making process to waive his constitutional right to testify on his own behalf;

(3)  trial counsel was ineffective for failing to file a motion for a new trial pursuant to Florida Rules of Criminal Procedure alleging (a) that the jury's verdict was contrary to the weight of the evidence; (b) that there was juror misconduct; and (c) that the trial court erred in not permitting the jury to view the crime scene;

(4)  trial counsel was ineffective for failing to impeach the victim when the victim's trial

> testimony was inconsistent with testimony
> given in pretrial deposition and police
> statements.

Exh. 7, Vol. I. The State filed a response, attaching portions of the trial record. *Id.* at 63-124. On December 19, 2001, the Court entered an Order summarily denying as conclusory ground 3(b) - - that counsel was ineffective for failing to move for a new trial based on insufficiency of the evidence. *Id.* at 125. The court also summarily denied ground 3(c) - - that the jury was not allowed to view the crime scene - - as being improperly raised in the Rule 3.850 Motion because the claim was raised on direct appeal. *Id.* at 126. The court then granted Strianese an evidentiary hearing on the remaining issues, and appointed the Public Defender to represent him in connection with the same. *Id.* At the conclusion of the April 1, 2003 evidentiary hearing, the post-conviction court issued an order denying the remaining claims raised in Strianese's Rule 3.850 Motion. Exh. 7, Vol. II at 204 (a complete copy of the transcript from the April 1, 2003 Evidentiary Hearing is contained within Exh. 7, Vol. II). The post-conviction court issued a written order, dated May 20, 2003, denying the Rule 3.850 Motion, which cited only to *Strickland v. Washington*, 466 U.S. 668 (1984). Exh. 7, Vol. IV at 216.

Appointed counsel, on behalf of Strianese, filed a Notice of Appeal. Exh. 7, Vol. III at 207-208. On June 4, 2004, the appellate court affirmed in part, reversed in part, and remanded

the post-conviction court's May 20, 2003 order. Exh. 10; *Strianese v. State*, 880 So.2d 759 (Fla. 2d DCA 2004). In particular, the appellate court found:

> Louis Strianese challenges an order entered after an evidentiary hearing that denied his motion for post-conviction relief, which alleged multiple claims of ineffective assistance of counsel. The trial court summarily denied one of Strianese's claims but held an evidentiary hearing on the remaining claims. Because the trial court failed to make findings of fact and conclusions of law as to the claims heard at the evidentiary hearing before it denied Strianese's motion, we reverse the order. *See* Fla. R. Crim. P. 3.850(d)(providing that following an evidentiary hearing on a post-conviction claim, the trial court shall make findings of fact and conclusions of law as to the issues presented by the defendant); *see also Bunger v. State*, 779 So. 2d 542 (Fla. 2d DCA 2000); *Kornegay v. State*, 826 So. 2d 1081 (Fla. 1st DCA 2002).
>
> We have considered the other arguments raised by Strianese and find them to be without merit. We affirm without discussion the trial court's summary denial of Strianese's claim that trial counsel was ineffective for failing to file a motion for new trial on the basis that the verdict was contrary to the weight of the evidence. On remand, the trial court shall enter an order making findings of fact and conclusions of law to support its determination that Strianese was not entitled to relief on his remaining claims.

*Id.* Following a denial of rehearing, mandate issued August 10, 2004. Exhs. 11, 12.

On remand, the post-conviction court, again denied Strianese's Rule 3.850 Motion in a written order entered November 10, 2004, Exh. 13, Vol. III at 241-315. Strianese again appealed. *Id.* at 318. Represented by appointed counsel, Strianese identified the following issue on appeal:

> The trial judge erred in denying the appellant's motion
> for post-conviction relief as the evidentiary hearing
> established that trial counsel had been ineffective in
> his representation of the appellant and that counsel's
> inadequate representation was prejudicial to the
> appellant.

Exh. 15 at I, 21.  The State submitted an answer brief.  Exh. 16 at

24.  On February 22, 2006, the appellate court *per curiam* affirmed

the post-conviction court's November 9, 2004 order, denying

Strianese's Rule 3.850 motion on remand in case number 2D04-5431.

*Strianese v. State*, 923 So. 2d 1174 (Fla. 2d DCA 2006).  Following

a denial of rehearing, mandate issued April 3, 2006.  Exhs. 19, 22.

### 3.   Rule 3.800(a) Motion

While Petitioner's Rule 3.850 Motion was pending, Strianese

filed a *pro se* Motion to Correct Sentence pursuant to Rule

3.800(a), dated August 15, 2003, alleging that his score sheet,

which the court relied upon in sentencing, was incorrect.  Exh. 25.

The State filed a response with exhibits.  Exh. 27.  By order dated

November 5, 2003, the post-conviction court incorporated the

State's response and denied Strianese's Rule 3.800(a) Motion

without an evidentiary hearing.  Exh. 28.  Strianese appealed, and

on April 16, 2004, the appellate court *per curiam* affirmed in case

number 2D03-5428.  Exh. 32; *Strianese v. State*, 875 So. 2d 621

(Fla. 2d DCA 2004 ).  After denial of rehearing, mandate issued on

June 2, 2004.  Exhs. 33, 34.

### 4.   Second Rule 3.850, construed as 3.800(a) Motion

Meanwhile, Strianese also filed a second motion for post-conviction relief pursuant to Rule 3.850 challenging the legality of Florida's Sexual Predator's Act, Fla. Stat. § 775.21 (the "FSPA").  Exh. 46.  In particular, Strianese claimed that the FSPA violated his "procedural due process" rights and was "unconstitutional."  *Id.* at 1.  The post-conviction court treated the motion as brought pursuant to Florida Rule of Criminal Procedure Rule 3.800(a) and denied relief finding:

> Defendant has not set forth any reason why the Florida Sexual Predators Act is unconstitutional as applied to him.  Defendant was convicted of lewd fondling, a sexual crime.

Exh. 47.  After appeal and briefing, Exhs. 48-49, the appellate court *per curiam* affirmed the post-conviction court's order in case number 2D04-4209 on December 22, 2004, citing to:

> *State v. Mackey*, 719 So. 2d 284 (Fla. 1998); *Milks v. State*, 848 So. 2d 1167 (Fla. 2d DCA) *review granted*, 859 So. 2d 514 (Fla. 2003); *Angell v. State*, 712 So. 2d 1132 (Fla. 2d DCA 1998).

Exh. 50; *Strianese v. State*, 892 So. 2d 487 (Fla. 2d DCA 2004). Mandate issued on January 18, 2005.  Strianese was refused discretionary review by the Florida Supreme Court on July 24, 2006. Exh. 52;  *Strianese v. State*, 937 So. 2d 123 (Fla. 2006).

### 5.   Rule 3.850(h) Motion

Strianese then filed a *pro se* motion to vacate his sentence dated February 25, 2005, under Florida Rule of Criminal Procedure

3.850(h) again challenging his sentence as illegal due to calculation errors in the score sheet. Exh. 57. The motion was denied without a hearing on April 14, 2005. Exh. 58. Strianese did not timely appeal, sought a belated appeal, and was ultimately granted leave to pursue a collateral appeal in a new case. Exhs. 59-65; *Strianese v. State*, 935 So. 2d 508 (Fla. 2d DCA 2006). On November 8, 2006, the appellate court affirmed with citations only in case number 2D06-3659, stating:

> Affirmed. *See State v. Mackey*, 719 So. 2d 284 (Fla. 1998); *Carpenter v. State*, 884 So. 2d 385 (Fla. 2d DCA 2004); *Campbell v. State*, 884 So. 2d 190 (Fla. 2d DCA 2004); *Brown v. State*, 827 So. 2d 1054 (Fla. 2d DCA 2002); *Soto v. State*, 814 So. 2d 533 (Fla. 2d DCA 2002); *Harris v. State*, 777 So. 2d 994 (Fla. 2d DCA 2000); *Harris v. State*, 789 So. 2d 1114 (Fla. 1st DCA 2001).

Exh. 67; *Strianese v. State*, 944 So. 2d 993 (Fla. 2d DCA 2006). Strianese's motion for rehearing and clarification was denied, and mandate issued January 8, 2007. Exhs. 68-69

### 6.   Petition for Writ of Habeas Corpus

In the interim, Strianese filed a *pro se* petition for writ of habeas corpus on July 7, 2005, seeking relief from being labeled a "sexual predator" under the FSPA. Exh. 72 at 1-17. The Twentieth Judicial Circuit Court denied the petition without a hearing, noting that the petition failed to state any *prima facie* basis for relief. *Id*. at 22. After briefing by the parties, Exhs. 73-74, the appellate court *per curiam* affirmed on October 11, 2006 in case

number 2D05-5029.  Exh. 75.  Mandate issued on November 1, 2006. Exh. 76.

### 7.    Second State Petition for Writ of Habeas Corpus

Strianese initiated a second *pro se* petition for writ of habeas corpus on February 24, 2006, again challenging the accuracy of his score sheet.  Exh. 78 at 1-20.   On March 23, 2006, the circuit court denied the petition, noting that Strianese currently had an appeal pending on this issue before the appellate court. *Id*. at 21.   Strianese appealed the March 23, 2006 order of denial, and the appellate court *per curiam* affirmed, on December 20, 2006, stating:

> Affirmed.  *See Peacock v. State*, 933 So. 2d 1219 (Fla. 2d DCA 2006); *Harris v. State*, 777 So. 2d 994 (Fla. 2d DCA 2000); *Parrish v. State*, 816 So. 2d 146 (Fla. 1st DCA 2002); *Harris v. State*, 789 So. 2d 1114 (Fla. 1st DCA 2001).

Exh. 81A; *Strianese v. State*, 944 So. 2d 993 (Fla. 2d DCA 2006). Mandate issued January 10, 2007.

### III.  Applicable § 2254 Law

Strianese filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action.  *Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654, 1664 (2007);  *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Davis v. Jones*, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).  Under AEDPA, the standard of review "is 'greatly

circumscribed and is highly deferential to the state courts.' *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002)." *Stewart v. Sec'y Dep't of Corr.*, 476 F.3d 1193, 1208 (11th Cir. 2007). *See also Parker v. Sec'y Dep't of Corr.*, 331 F.3d 764 (11th Cir. 2003). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### A.   Federal Question

A federal court may only entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States."   28 U.S.C. § 2254(a).   Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254.   *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983); *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000).   A violation of a state rule of procedure, or of state law itself, is not a violation of the federal constitution.   *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989).   "It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir.

2005)(internal quotations and citations omitted).  Although the determination of whether a constitutional decision of the Supreme Court is a matter of federal law, "[w]hen questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." *Danforth v. Minnesota*, 552 U.S. 264, 1048 (2008)(dissent, quoting *American Trucking Assns., Inc. v. Smith*, 496 U.S. 167, 177-178 (1990)).

## B.  Exhaustion and Procedural Default

A federal court may only review an issue under § 2254 if petitioner first afforded the state courts an adequate opportunity to address that issue.  28 U.S.C. § 2254(b)(1)(A).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(internal citations and quotations omitted.)  This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts.  *Rhines v. Weber*, 544 U.S. 269, 274 (2005).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  *See also Henderson v. Campbell*, 353 F.3d

880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364, 365 (1995)(stating "exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'").

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . . . ." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. *House v. Bell*, 547 U.S. 518, 536-37 (2006); *Mize v. Hall*, 532 F.3d at 1190. Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a

showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *House v. Bell,* 547 U.S. 518, 536 (2006); *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Prior to turning to the merits of the Petition, the Court will address whether Grounds 1, 3, 4, 6, 8, and 10 are procedurally barred as urged by Respondent.

### Ground 1

In Ground 1 of the Petition, Petitioner claims that trial counsel was ineffective because counsel "did not utilize appropriate means to submit [a] motion for jury to view [the] alleged crime scene." Petition at 4. In support, Petitioner states that the trial court "admonished counsel for not using proper procedure in placing a motion before the court." *Id.* As a result, Petitioner claims that the trial court "became very angry and inappropriately expressed his anger by ripping up counsel's motion and throwing it away." *Id.* Petitioner argues that counsel's failure to raise the motion in a procedurally correct manner prejudiced his defense, because the jury was unable to view the crime scene, which Petitioner characterizes as his "second witness." *Id.*

Respondent submits that Ground 1 is procedurally barred because Petitioner did not raise this specific ground of ineffectiveness in his Rule 3.850 Motion. Response at 11.

Instead, Petitioner only faulted trial counsel for failing to file a motion for a new trial based upon the trial court's alleged error in denying the motion for jury view.  *See* Exh. 7 (ground 3).  In particular, Respondent points out that Petitioner did not assign fault to counsel for failing to present the motion for jury view to the trial court in the proper procedural manner.

Upon review of the record, the Court finds that Petitioner did not raise the substance of Ground 1 in the context that it is raised before this Court to the State courts in any of his post-conviction motions.  Instead, Petitioner attributed ineffectiveness to trial counsel due to counsel's failure to seek a new trial based upon the trial court's alleged error in denying the motion for jury view.  This aspect of the counsel's ineffectiveness was summarily denied by the post-conviction court and affirmed by the appellate court.  Whether counsel failed to present a motion to the court in a procedurally correct manner is a different substantive claim from whether counsel was deficient for failing to file a motion for a new trial based upon the trial court improperly denying the motion.  Thus, the Court finds that Petitioner did not raise Ground 1 to the State court and is foreclosed under Florida's two-year rule from now raising the Ground.  Fla. R. Crim. Pro. 3.850(b).  Petitioner fails to show adequate cause and actual prejudice to excuse his default.  Petitioner does not allege or demonstrate that he is

entitled to the fundamental miscarriage of justice exception. Thus, the Court dismisses Ground 1 as procedurally barred.

Further, the record refutes Petitioner's characterization of the events surrounding the trial court's denial of the motion for jury view.  At the pretrial hearing on the motion, the Court considered the motion, heard argument on the motion from defense counsel, but denied the motion, stating the following:

> There is nothing that you have stated to me that cannot be elicited by testimony from people that know that area. I am not going to expend the county funds to pack a jury and all the court personnel out there to do these things that can easily be done by the testimony of anybody that has ever been in that store.  You can get testimony as to dimensions.  You can ask people that work there how big it is; would you have heard it; da-da-da-da-da; are there locks on the door; why didn't you lock the door; so on and so forth.  I'm not going to do that.  All right.

Supp. I at 13-14.   Consequently, the trial court denied the motion, after argument on the merits.  The trial court did not deny the motion because counsel failed to file the motion in a correct procedural manner.  Therefore, in the alternative, the Court denies Ground 1 as refuted by the record.

**Ground 3**

Petitioner asserts that counsel was ineffective because he "would not allow Defendant to testify on his own behalf" and "threatened to withdraw if Defendant participated in setting parameters of representation."  Petition at 7.  Petitioner also claims that the trial court erred in failing to ask Petitioner if

he wished to testify on his own behalf or if he was waiving his right to testify. *Id.*

Respondent moves to dismiss Ground 3 as procedurally barred because Petitioner waived and abandoned this claim by not briefing it with specificity on appeal upon denial by the post-conviction court after evidentiary hearing. Response at 24. The State raised Petitioner's waiver and abandonment of this claim in its brief in response to Petitioner direct appeal brief. *Id.*

Upon review of the record, the Court agrees that Petitioner has waived and abandoned Ground 3. Petitioner had originally raised this claim as ground one in his Rule 3.850 motion and was granted an evidentiary hearing on the claim. After remand, Petitioner, however, did not raise this claim of ineffectiveness on appeal. *See generally* Exh. 15. Instead, as reflected in the record, Petitioner elected to raise only the following three issues on appeal: (1) trial counsel was ineffective for failing to move for a new trial due to possible juror misconduct; (2) trial counsel was ineffective for failing to inform the court of Strianese's mental health issue; and (3) trial counsel was ineffective for failing to impeach the victim's trial testimony with prior inconsistent statements. *Id.* at 22, 26, and 29. The State expressly raised Petitioner's waiver and abandonment of this claim in its response. Exh. 16 at 27 (stating "Strianese has apparently abandoned ground one of his motion in which he alleged that his

attorney gave him erroneous advice concerning his right to testify
. . .").  In support that Strianese waived this ground, the State
cited to *Shere v. State*, 742 So. 2d 215, 224 n. 6 (Fla. 1999) and
*Duest v. Dugger*, 555 So. 2d 849, 851-52 (Fla. 1990).  *Id*. at 28.
The appellate court *per curiam* affirmed without opinion.

The Court dismisses Ground 3 as unexhausted and procedurally
barred.  Here, Petitioner did not raise this claim on appeal after
remand to and denial by the post-conviction court.  In Florida,
exhaustion of a Rule 3.850 claim includes an appeal from its
denial.  *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979)[4]
(finding that exhaustion requires not only the filing of a Rule
3.850 motion, but also an appeal of its denial)).  Because
Petitioner was afforded an evidentiary hearing in connection with
his claims, Petitioner was required to file a brief to appeal the
final order denying his Rule 3.850 motion.  *See* Fla. R. App. P.
9.141(b)(3); *Shere v. State*, 742 So. 2d 215, 224 n.6 (Fla. 1999);
Coolen v. State, 696 So. 2d 738, 742 n. 2 (Fla. 1997); *Cortes v.
Gladish*, 216 F. App'x 897, 899-900 n. 2 (11th Cir. 2007); *Atwater
v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006).  Petitioner fails to
show adequate cause and actual prejudice to excuse his default.
Nor does Petitioner allege or demonstrate that he is entitled to

---

[4]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.
1981) (en banc) the Eleventh Circuit adopted as binding precedent
all the decisions of the former Fifth Circuit handed down prior to
the close of business on September 30, 1981.

the fundamental miscarriage of justice exception.  Thus, the Court dismisses Ground 3 as procedurally barred.

**Ground 4**

Petitioner avers that the trial court erred in granting the State's motion *in limine*, which deprived him of his "due process [rights] to present facts to the jury concerning the alleged victim." Petition at 9.  Specifically, Petitioner claims that he was prevented from introducing evidence that the victim was adjudicated for crimes "involving acts of dishonesty" because the trial court improperly granted the State's motion *in limine* regarding the victim's prior juvenile record.  *Id*.

Respondent seeks dismissal of Ground 4 on the basis that the claim is procedurally barred because Petitioner failed to preserve this claim for direct appeal at trial.  Response at 26.  In the alternative, Respondent submits that this claim fails to raise a federal habeas issue because it involves state-law evidentiary rulings for which habeas relief does not lie.  *Id*. at 26-27.

Petitioner raised the issue of trial court error concerning the trial court's decision to grant the State's motion *in limine* as "issue II" on direct appeal.  Exh. 2 at 22-30.  Petitioner contended that the court's decision to grant the motion "substantially prejudiced" him from "developing his defense theory through cross-examination."  *Id*. at 22.

In response to this claim of trial court error, Respondent argues that Petitioner had not preserved the issue for review because Petitioner did not make a proffer of the alleged evidence. Exh. 3 at 11.  In the alternative, Respondent submits that the issue raises only an issue under State law for which habeas relief is not available.  *Id*.

Here, the Court is not persuaded that Petitioner did not preserve this claim for review on direct appeal.  Nonetheless, the Court finds that Ground 4 fails to raise a federal issue for which habeas relief lies.  Federal habeas courts do not sit to review State evidentiary rulings unless the alleged error is of such a magnitude as to render the defendant's trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 71 (1991); *Knight v. Singletary*, 50 F.3d 1539, 1546 (11th Cir. 1995).  Here, to the extent considered by the appellate court on direct review, the State court found no evidentiary error under Florida law.  It is a "fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005)(internal quotation omitted).  Moreover, this Court finds no error in the evidentiary determination by the state court judge, much less error which is of such a magnitude as to render the state defendant's trial fundamentally unfair.

Consequently, the Court dismisses Ground 4 as failing to raise a federal issue for which habeas relief lies.

In the alternative, to the extent raised on direct review as a federal claim, the Court denies relief.[5]   Prior to trial, the following exchange occurred between counsel and the court regarding the State's motion *in limine*:

> MS. SHAW:
> Your Honor, the State's requesting that you limit --
> or, actually, exclude any mention or admission of the
> victim in this case, his juvenile delinquency record or
> any adjudications of delinquency in this case.  We
> would cite to the *State* -- *Lawton v. State*, 578 So. 2d
> 1369.  It's a Third District Court of Appeal case which
> stands for the proposition that State's witnesses could
> not be impeached with juvenile delinquency
> adjudications.
>
> THE COURT:
> What do you say about that, Mr. Fuller?
>
> MR. FULLER:
> Your Honor, I have quite a few cases on record.  The
> most prominent one being --
> THE COURT:
> No. Just tell me what you have to say about it.  I know
> what the law is.  Go on, please.
>
> MR. FULLER:
> All right. Well, I do want to - - is there a
> presumption, Judge, that I have these in the record,
> then?  I want to - -
>
> THE COURT:
> Well, then, read them in the record.

---

[5]Notably, on direct appeal, in addition to arguing Florida evidentiary rules, Petitioner argued that the trial court's ruling violated Petitioner's rights under the confrontation clause of the Sixth Amendment.  Exh. 2 at 28.

MR. FULLER:
All right, sir. The prominent case that I -- I want to
bring to the Court's attention, I'm sure you're well
aware of it, Judge, but, again, *Davis versus Alaska*,
which is the prominent case, Supreme Court.  There are
other cases, *Daniels versus State of Florida*, *McKnight
versus State of Florida*.  If you want cites, Judge, I'm
just trying to move it along.  *Sloan versus State of
Florida*. That's 427, 808.  *McKnight* is 390 So.2d 485.
And *Daniels* is 374, 1116.  Most of these cases come to
the point, Your Honor, that although most of the time
the juvenile's record is barred, in the case where
there's a correlation and a -- a plausible bias as on
the part of the juvenile that would help explain his
testimony, that information is allowed in, as is the
case in *Davis versus Alaska.*  In that situation, the --
the juvenile could have been one of the burglars in the
case, and, therefore, that information was barred from
the jury.  In this situation, Your Honor, the young man
was - - and did have a very serious argument with his
mother to the point they called 911.  There was
domestic violence, and that was his first offense.  He
also was flunking in school. One of the courses, he had
some - -

THE COURT:
What does that have to do with a lewd fondling, or
whatever this is we're trying today?

MR. FULLER:
Well, what I'm trying to get at, Your Honor, is the
fact that the juvenile himself was trying to get on the
good side of his mother. He had been in the dog house
with her because of failing grades, because of a
serious argument to the point where the police had to
be called.

THE COURT:
So your theory is, is that he -- in order to get in the
good graces with his mother, he did what?

MR. FULLER:
He concocted this story, Your Honor.

THE COURT:
To make his mother happy?

MR. FULLER:
To come to his support, to come to his aid. In the
past, he had been in trouble. He also was charged with
shoplifting.  He - as I say, he had bad marks in
school. He had flunked English.

THE COURT:
So in order to make this all right with his mother, he
concocted a story that he was fondled in the Foot
Locker?

MR. FULLER:
That's correct.

THE COURT:
Well, that's a - -

MR. FULLER:
She immediately - - she immediately came to his aid.
She immediately got behind him 100 percent, and all --
all the past was forgiven, all the shoplifting.

THE COURT:
I grant [the State's] motion.

MS. SHAW:
Thank you, Your Honor.

THE COURT:
You will not mention any of his juvenile record in this
case.  Okay.  You've had some -- now I need to talk to
you about this this -- you want us all to go to Foot
Locker?

MR. FULLER:
That's correct.

MS. GATHERS:
Your Honor, along with that juvenile record, I think
our motion included whether - - even asking the child
whether or not he was on community control.  He was not
on community sanctions at the time.

THE COURT:
That's part of it. Nothing - - nothing will be said
about any of his record at all.

MR. FULLER:
The argument with his mother?

```
THE COURT:
You want to ask him about an argument with his mother?
If you think it has any relevancy, I can't stop you
from asking questions; however, if it violates rule - -
or the rule of the case which I've just set forth, then
I'm going to deal with you harshly.  Now, if you want
to ask him has he ever had an argument with his mother,
I guess if you think that's relevant, you can ask that.

MR. FULLER:
All right.

THE COURT:
That's as far as it goes. I've had arguments with my
mother, by the way.

MR. FULLER:
Well, this happened just a few months prior to this
occasion, Your Honor.

THE COURT:
I probably had an argument with my mother last week.

MR. FULLER: But to the point where the 9 - - they had
to call 911? I don't think so. I think --

THE COURT: You can ask him if he called his mother and
if 911 was called.  That's the end of it.
```

Exh. Supp. I at 6-11.   Defense counsel questioned both the victim

and the victim's mother regarding the victim's problems at school

as well as the argument between the victim and his mother that

resulted in the 911 telephone call.  *Id*. at 146, 149 and 184.

The Confrontation Clause of the Sixth Amendment guarantees the

right of a criminal defendant "to be confronted with the witnesses

against him."  This includes the right to cross-examine witnesses.

*See Pointer v. Texas*, 380 U.S. 400, 406-07 (1965).  However, "the

Confrontation Clause guarantees only 'an opportunity for effective

cross-examination, not cross-examination that is effective in

whatever way, and to whatever extent, the defense might wish.'" *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987)(quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). While "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination," the Confrontation Clause does not limit the trial judge's ability "to impose reasonable limits on such cross-examinations based upon concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 474 U.S. 673, 678-79 (1986); *see also Alford v. U.S.*, 282 U.S. 687, 694 (1931)(recognizing that the scope of cross-examination regarding a particular line of inquiry is "within the sound discretion of the trial court," and "it may exercise a reasonable judgment in determining when [a] subject is [inappropriate]."). Yet, a trial court may not prohibit all questioning of a witness about an event that the jury may reasonably have found provided the witness with a motive for his testimony. *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Even if the Court finds that the trial court's ruling was constitutional error, habeas relief is only available if "the error had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

Here, the trial court did not completely prohibit defense counsel from cross-examining the victim about the prior incident with his mother that resulted in a telephone call being placed to 911. In fact, counsel cross-examined both the victim and his mother. Additionally, in closing, defense counsel argued that:

> There's no other evidence whatsoever of any wrongdoing on the part of [Petitioner] other than what the statements made by this rebellious and disruptive student, whereabout his problems in school, his failure to mind, notes sent home to his mother. You heard about arguments that the mother had with the boy to the point where she had to call 911. So I want to set the record here so we know. This boy is not an angelic creature. There are problems he had out there, and I think that you should be aware of that.

Exh. Supp. II at 289.

Petitioner fails to discuss or explain how the State court's decision on this issue was contrary to or an unreasonable application of clearly established federal law. Moreover, even assuming *arguendo* that there was a confrontation clause error, the Court does not find that the error had a substantial and injurious effect on the jury's verdict because defense counsel was able to cross examine the victim concerning the facts necessary to argue that the victim had a motive to lie about the incident during his closing argument. Consequently, in the alternative, the Court denies Petitioner relief on Ground 4 on the merits.

### Ground 6

Petitioner claims that trial counsel was ineffective because he failed to interview a defense witness who had information that

would have aided the defense.   Petition at 10.   In particular, Petitioner states that Don Barrickman was available at trial to testify to "contradict testimony and assertions made by both [the] alleged victim and prosecutor."   *Id*.

Respondent submits that Ground 6 is procedurally barred. Response at 34-35.   Petitioner did not raise a claim of ineffective assistance of counsel in failing to call Don Barrickman, or any witness, as an independent basis for relief in his Rule 3.850 Motion.   *Id*.

The Court agrees that Petitioner failed to raise this claim in a properly filed post-conviction motion to the State court.   *See generally* record.   Petitioner does not present adequate cause and actual prejudice to excuse his procedural default.   Nor can Petitioner demonstrate a fundamental miscarriage of justice to excuse his default of this claim.   Consequently, Ground 6 is dismissed as procedurally defaulted.

**Ground 8**

Petitioner asserts that counsel was ineffective during sentencing because counsel failed to advise the trial court that Petitioner's score sheet was incorrect, despite Petitioner advising counsel of the same.   Petition at 11.   As a result, Petitioner claims that he was improperly sentenced to "an elevated sentence outside the sentencing bracket."   *Id*.

Respondent submits that Ground 8 is procedurally barred. Response at 30. Petitioner did not raise this issue as an independent claim in his Rule 3.850 Motion, or in any post-conviction motions, and is now foreclosed from doing so by the two-year limit under Rule 3.850, as well as the State's successive petition doctrine. *Id.*

While Petitioner challenged the legality of his sentence, the Court agrees that Petitioner did not raise an ineffective assistance of counsel claim concerning the accuracy of the score sheet in a properly filed post-conviction motion to the State court. *See generally* record. Petitioner does not present adequate cause and actual prejudice to excuse his procedural default. Nor can Petitioner demonstrate a fundamental miscarriage of justice to excuse his default of this claim. Consequently, Ground 8 is dismissed as procedurally defaulted.

### Ground 10

Petitioner accuses his trial counsel of interviewing him and appearing in state court while under the influence of alcohol. Petition at 12. Petitioner states that he "detected aroma of alcohol on counsel's person when counsel visited [him] in county jail and again when counsel leaned over [his] shoulder to talk to him while sitting at defense table during trial." *Id*. Further, Petitioner claims that counsel "became rude and obnoxious and showed great animosity towards Defendant and his mother." *Id*. Due

to counsel's alleged impairment, "there was a lot of misunderstanding and conflict" between counsel and Petitioner. *Id.* at 13.

Respondent submits that Ground 10 is procedurally barred. Response at 40. Petitioner did not previously raise this claim in his Rule 3.850 Motion, or in any post-conviction motions, and is now foreclosed by the two-year limit of Rule 3.850, as well as the State's successive petition doctrine. *Id.*

The Court agrees that Petitioner has failed to raise this issue in any properly filed post-conviction motions to the State court. *See generally* record. Petitioner does not present adequate cause and actual prejudice to excuse his procedural default. Nor can Petitioner demonstrate a fundamental miscarriage of justice to excuse his default of this claim. Consequently, Ground 10 is dismissed as procedurally defaulted.

### C. Deference to State Court Decision

Where a petitioner's claim raises a federal question, was exhausted, is not procedurally barred, and was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. *See, e.g.*, *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See Brown v. Payton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson*, 527 F.3d at 1146.

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward*, 591 F.3d at 1155 (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000),

*cert. denied*, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

### D.   Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, *i.e.*, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether

the deficient performance prejudiced the defendant, *i.e.*, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 688; *see also Bobby Van Hook*, 558 U.S. ___, 130 S. Ct. 13, 16 (2009). Thus, a habeas court's review of a claim under the *Strickland* standard is "doubley deferential." *Knowles v. Mirzayanze*, ___ U.S. ___, 129 S. Ct. 1411, 1420 (2009)(citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006), *cert. denied sub nom. Jones v. Allen*, 127 S. Ct. 619 (2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. *Id.* A court must adhere to a strong presumption that

"counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.), *cert. denied sub nom. Ladd v. Burton*, 493 U.S. 842 (1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

The *Strickland* standard "applies whether [a court is] examining the performance of counsel at the trial or appellate level." *Eagle v. Linahan*, 279 F.3d 926, 938 (11th Cir. 2001) (citing *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987)).  To demonstrate that his appellate counsel's performance was deficient, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687.  "In considering the reasonableness of an attorney's decision not to raise a particular claim, [a court] must consider 'all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Eagle*, 279 F.3d at 940

(quoting *Strickland*, 466 U.S. at 691).  "Thus, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time.'"  *Id.* (quoting *Strickland*, 466 U.S. at 689).  The reasonableness of counsel's assistance is reviewed in light of both the facts and law that existed at the time of the challenged conduct.  *Chateloin v. Singletary*, 89 F.3d 749, 753 (11th Cir. 1996).

To determine whether Petitioner was prejudiced by his appellate attorney's failure to raise a particular issue, the Court "must decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal."  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988)), *cert. denied*, 531 U.S. 1131 (2001). "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal."  *Eagle*, 279 F.3d at 943 (citing *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990)).

## IV.  Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court.  *Schriro v. Landrigan*, 550 U.S. 465, 474-

475 (2007).  Petitioner does not proffer any evidence that would require an evidentiary hearing, *Chandler v. McDonough*, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. *Schriro*, 550 U.S. at 475.  Consequently, the Court denies Petitioner's Motion for an Evidentiary Hearing (Doc. #51), which was previously deferred pending the Court's review of the record. *See* November 2, 2010 Order (Doc. #53).

### **Ground 2**

Petitioner assigns error to counsel for failing to impeach the State's key witness with conflicting statements.  Petition at 6. Petitioner states that counsel was reprimanded by the trial court for not properly impeaching the victim with the testimony he gave during his deposition.  *Id*.  Petitioner asserts that, due to the trial court's scolding, counsel abandoned "all further attempts to impeach" the victim.  *Id*.  Petitioner states that, as a result, the jury never learned of "crucial conflicting inconsistent testimony" by the victim which would have demonstrated "reasonable doubt." *Id*.

The record reveals that Petitioner presented this claim to the State court in his Rule 3.850 motion as his third ground for relief and also appealed the denial therefrom to the appellate court. Respondent concedes that Ground 2 is exhausted.  Response at 18-19. Thus, the Court will turn to the merits of Ground 2.

Petitioner was afforded an evidentiary hearing on this claim. The post-conviction court, in finding Petitioner's claim without merit, stated as follows:

> At the evidentiary hearing Defendant's attorney and Attorney Fuller reviewed numerous instances of questions and answers in the record reflecting the victim's testimony. Attorney Fuller testified that the victim was a young man with some form of mental retardation, and that he attempted to impeach the victim with several instances where the victim was inconsistent. The determination of how to handle a victim on cross-examination is generally within the sound trial discretion and strategy of counsel, balancing the fine line between pointing out inconsistencies and being seen by the jury as badgering the victim. On this issue the court finds the testimony of Attorney Fuller to be credible and that of the Defendant to be not credible on this issue, and that the records support the determination that counsel conducted an adequate cross-examination of the victim.

Exh. 13, Vol, III at 242.

In its May 20, 2003 order, the post-conviction court cited to *Strickland v. Washington*, 466 U.S. 668 (1984) as the governing standard in evaluating a claim that counsel was ineffective. Exh. 7, Vol. IV at 216. Thus, the court identified and applied the proper federal law in evaluating Ground 2.

The record of the evidentiary hearing reveals that defense counsel, Mr. Fuller, had been practicing law for 25 years. Exh. 13, Vol. II at 179. Mr. Fuller conceded that the only evidence in the case was the testimony of the victim, so it would be important to cross-examine the victim at trial with any inconsistent statements he made at trial, in his deposition, and in his statement to police. *Id*. at 159. Mr. Fuller, however, disagreed

that certain inconsistencies pointed out by Petitioner were actually inconsistencies. *Id.* at 160-179. The Court agrees that Petitioner overstates the alleged inconsistencies in the victim's statements. Additionally, Mr. Fuller explained that the victim was mentally slow and there was a lapse in time between the time the victim gave his statement to the police, was deposed, and the time of trial. *Id.* at 181. Further, defense counsel concentrated on cross-examining the victim on the issues that were deemed more substantive by counsel, which counsel believed to be more effective, considering the jury was out deliberating for over 2 ½ hours. *Id.* at 161, 174. As noted by the post-conviction court during the hearing, these efforts to impeach the victim on every tiny detail may have appeared to the jury to be "nitpicking." *Id.* at 178 (wherein the post-conviction court repeatedly stated that the alleged inconsistencies were not substantial but were a line-by-line review of minor details).

The Court presumes counsel's effectiveness, does not employ hindsight in examining counsel's actions, and the fact "that other testimony might have been elicited from those who testified is not sufficient to prove ineffectiveness of counsel." *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995). Here, the post-conviction court found defense counsel's decision not to attack the victim with every perceived discrepancy, was reasoned, credible and strategic in light of the victim's mental state. There is even a stronger reluctance to second guess strategic decisions made by an

experienced trial attorney.  *William v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999).  A determination of a factual issue made by the State court is presumed correct.  *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 938 (11th Cir. 2009).  "The question of whether an attorney's actions were actually the product of a tactical decision is an issue of fact. . . ."  *Id.* (quoting *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998)).

Petitioner fails to explain how the State court decision on Ground 2 was "contrary to" or an "unreasonable application of" *Strickland*.  Indeed, Petitioner does not even address the State court's legal conclusions in his Petition.  *See generally* Petition. Based upon the foregoing, the Court finds that Petitioner has failed to demonstrate that the state court's decision was contrary to or an unreasonable application of *Strickland,* or an unreasonable determination of the facts.  Consequently, the Court denies Ground 2 as without merit.

### **Ground 5**

Petitioner contends that counsel was ineffective, after discovering that Petitioner had a "mental health defect," and not moving to have him evaluated for competency.  Petition at 9. Petitioner states that he informed counsel that he was taking psychotropic medication during the pretrial and trial proceedings, but counsel failed to alert the court of Petitioner's mental condition.  *Id.*

Petitioner raised this claim in his Rule 3.850 Motion, at the evidentiary hearing, and in his appeal therefrom.  Thus, the Court will address the merits of Ground 5.

After remand, the post-conviction court denied Petitioner relief on this claim, and in pertinent part held:

> At the evidentiary hearing, counsel testified that in his many interactions with the Defendant he never observed any behavior by the Defendant which would indicate any mental problems or deficiencies.  Counsel testified that Defendant was cooperative and assisted at trial.  None of the testimony from the Defendant indicated that his alleged mental problems either interfered with his ability to assist in his defense or rose to the level of a defense to the charges.  As to this issue, the court finds that the testimony of counsel is credible and the testimony of the Defendant is not credible, and that counsel acted properly on this issue.

Ex. 13, Vol. III at 242.

It appears that the State court denied Petitioner relief on the prejudice ground of *Strickland*.  The record reflects that Mr. Fuller was aware that Petitioner was on lithium, as Petitioner had written to him: "I was diagnosed by the VA with a mental disorder said to be from a chemical imbalance for which I've been taking for a number of years mind-altering drugs, which I must constantly take in order to maintain acceptable behavior."  *Id.*, Vol. II at 182. Mr. Fuller testified that he understood Petitioner to mean that, by being medicated, he was able to conform to acceptable courtroom behavior.  *Id.*  Mr. Fuller also testified that he had previously represented Petitioner and did not observe any signs of any problems.  In fact, counsel stated that he had absolutely no

problem with Petitioner during trial and Petitioner had no problem communicating with counsel.  Indeed, Petitioner participated fully during the trial in selecting jurors, taking notes and passing them to counsel for cross-examination.  Additionally, the testimony by Petitioner's other witnesses, Don Barrickman, Petitioner's mother, and Petitioner's brother, also established that lithium helped Petitioner's mental condition.  *Id*. at 191, 194, 201.

Under federal law, "a person whose mental condition is such that he lacks capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).  Upon review, the Court finds that there is nothing in the record to remotely suggest that Petitioner lacked the necessary mental capacity to stand trial. Petitioner has not demonstrated that he is  entitled to relief on this ground because he has not shown that the adjudication of this claim by the State court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Further, the state court's decision was not based on an unreasonable determination of the facts in light of the evidence presented to the State court.  Consequently, the Court denies Petitioner relief on Ground 5 as without merit.

**Ground 7**

Petitioner faults trial counsel for failing to alert the trial court about juror misconduct. Petition at 10. In support of this claim, Petitioner claims that during *voir dire* an identified juror failed to inform the court that his brother was recently convicted and sentenced to prison for an offense similar to that for which Petitioner was charged. *Id*. at 11. Petitioner claims that he advised trial counsel of the alleged juror misconduct, but that trial counsel failed to advise the court or request a mistrial. *Id*.

Respondent concedes, and the record reveals, that Petitioner presented this claim as his fourth ground for relief in his Rule 3.850 motion. Exh. 7. The post-conviction court, after an evidentiary hearing, denied Petitioner relief on this claim. Petitioner filed an appellate brief rasing this claim on appeal, which the appellate court summarily denied. Thus, the Court will address the merits of Ground 7, to the extent that the claim was raised in Petitioner's Rule 3.850 Motion, at the evidentiary hearing, and on collateral appeal.

In denying Petitioner relief on this claim, after remand, the post-conviction court held:

> In his fourth and final ground for relief, Defendant alleges that counsel was ineffective in his handling of a possible juror misconduct issue and not moving for a new trial because of the juror. Defendant's testimony at the hearing was that during the course of the trial,

Defendant became aware that the son[6] of one of the jurors
had been accused or convicted of a sexual crime similar
to that with which the Defendant was charged.  At the
evidentiary hearing, Defendant testified that in his
opinion counsel should have moved to strike this juror or
moved for a mistrial.  Counsel, on the other hand,
testified that when the Defendant made him aware of the
situation with the juror, he elected to take no action
against the juror and actually considered the fact that
the juror's son had been charged with a similar crime to
be possibly beneficial to the Defendant as the juror
could sympathize with the Defendant being in a position
similar to that of his son.  On this issue the court
finds that the testimony of counsel was credible and that
counsel did not act improperly in determining that the
potential juror misconduct of failing to disclose a fact
that was actually beneficial to the Defendant [sic].
Counsel's decision amounts to trial strategy and will not
be disturbed by this court.

Ex. 13, Vol. III at 242.

The record reveals that trial counsel did not learn of the
alleged juror misconduct during trial but first learned about it
from Petitioner by letter after the conclusion of trial.  *Id.* at
282.  Consequently, counsel appraised Petitioner that the issue of
the alleged juror misconduct was an appellate issue.  *Id.* at 305.
During the evidentiary hearing, Petitioner did not present any
evidence as to the juror's brother' name or the date of his alleged
conviction.  *Id.*  Nor did Petitioner present any evidence that the
juror failed to answer any question truthfully during *voir dire*.
*Id.*  Instead, Petitioner only introduced evidence that "someone" at
the jail told him that a juror had a family member that "was just

---

[6]Although the State court's order refers to the juror's "son,"
it appears from the testimony at the evidentiary hearing that the
relative of the juror was a brother.

convicted." *Id*. Petitioner elaborated that the "someone" was an inmate, but he did not know the inmate's name, and he was told the family member had been convicted on lewd and lascivious charges. *Id*. at 309.

Under federal law, "a mistrial or new trial is required only if the extrinsic evidence known by the jury posed a reasonable possibility of prejudice to the defendant." *Boyd v. Allen*, 592 F.3d 1274, 1305 (11th Cir. 2010)(quoting *U.S. v. Ronda*, 455 F.3d 1273, 1299 (11th Cir. 2006)). Here, there was no evidence submitted by Petitioner that the juror in question considered any extrinsic evidence. Instead, Petitioner's claim is premised solely on speculation. As surmised by defense counsel, it is equally plausible that the juror could have had empathy for Petitioner.

The Court finds that Petitioner is not entitled to relief on Ground 7 because he has not shown that the adjudication of this claim by the State court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Consequently, the Court denies Ground 7 as without merit.

**Ground 9**

Petitioner contends that the Florida Sexual Predator Act, Fla. Stat. § 775.21 ("FSPA") is unconstitutional.    Petition at 11. Petitioner claims that he was denied a hearing by the trial court and was not permitted to present  evidence or expert witnesses to dispute that he met the criteria of a sexual predator, which violated his due process rights.  *Id*. at 11-12.

Prior to sentencing, the State filed a motion seeking to have Petitioner designated a sexual predator under § 775.21 based upon Petitioner's previous *nolo contendere* plea to a second-degree felony under Fla. Stat. § 800.04 for a lewd and lascivious act in case number 89-2253-CF  and the current conviction for lewd fondling for which Petitioner was to be sentenced in case number 99-2055-CF.  Exh. 1 at 12-21.  The trial court concluded, at the March 6, 2000 hearing, that based on Petitioner's convictions, he qualified under the statute to be designated a sexual predator. *Id*. at 29.

The FSPA identifies certain offenses and mandates that a person convicted of any such offense be designated a "sexual predator."  *See generally* Fla. Stat. § 775.21 *et seq*.  Once an individual is designated, the FSPA imposes, *inter alia*, registration and public-notification requirements.  *Id*.  The FSPA does not afford the trial court with any discretion, nor does it mandate any hearing on the offender's actual dangerousness.  *Id*.

The Florida Supreme Court has expressly rejected that the FSPA is unconstitutional or violates an individual's due process rights. *Milks v. State*, 894 So. 2d 924 (Fla. 2005).   The designation of an offender as a sexual predator is not a sentence.   *State v. Robinson*, 873 So. 2d 1205, 1219 (Fla. 2004).

Whether Petitioner was properly designated as a sexual predator based upon his convictions is a question for the State court, because it involves an interpretation of State law.   The FSPA clearly conferred jurisdiction upon the trial court to designate Petitioner a sexual predator.   It is also undisputed that Petitioner met the statutory criteria for being designated a sexual predator because of the nature of the crimes for which he was convicted and sentenced.   Because the trial court acted within its jurisdiction in designating Petitioner a sexual predator, Petitioner's due process claim fails.

Petitioner has failed to identify United States Supreme Court precedent that contradicts the Florida Supreme Court's holding in *Milks*.   Indeed, as noted by the Supreme Court in *Kennedy v. Louisiana*, 554 U.S. 407, 456-57 (2008), due to "the growing alarm about the sexual abuse of children" Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, 42 U.S.C. § 14071, which requires states to establish registration systems for convicted sex offenders.   *See also Carr v. U.S.*, ___ U.S. ___, 130 S.Ct. 2229, 2233

(2010)(recognizing constitutionality of the Sex Offender and Registration and Notification Act ("SPRNA"), 18 U.S.C. § 2250(a), that makes it a federal crime for, *inter alia*, any person who is required to register under SORNA and who travels in interstate commerce and fails to register or update his registration). Thus, the Court finds that State court's decision on this claim was not contrary to, or an unreasonable application of governing federal law and denies Petitioner relief on Ground 10.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    Petitioner's Motion for an Evidentiary Hearing (Doc. #51) is **DENIED.**

2.    The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** for the reasons set forth herein.

3.    The Clerk of the Court shall enter judgment accordingly; terminate any pending motions; and, close this file.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, ___ U.S. ___, 129 S. Ct. 1481, 1485 (2009).  "A

[COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this 28th day of March, 2011.

Charlene Edwards Honeywell
United States District Judge

SA: hmk

Copies: All Parties of Record

-48-